# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| NAVISTAR LEASING COMPANY | § | |
| | § | |
| v. | § | |
| | § | |
| TANGO TRANSPORT, LLC D/B/A | § | |
| TANGO TRANSPORT, INC., TANGO | § | Civil Action No. 4:15-CV-00866 |
| LEASING CORP., ADGO MARKETING, | § | Judge Mazzant |
| LLC, CANGO, INC., GMGO, INC. D/B/A | § | |
| GMCO, LLC, GORMAN GROUP, INC., | § | |
| TANGO ENTERPRISES, INC., TANGO | § | |
| LOGISTX INC. D/B/A TANGO LOGISTX, | § | |
| LLC, TANGO MOTOR TRANSIT, LLC, | § | |
| TANGO TRUCK SERVICES, LLC, | § | |
| BOBBY J. GORMAN, ROBERT E. | § | |
| GORMAN | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion to Abate (Dkt. #80). After reviewing the relevant pleadings and motion, the Court finds that the motion should be granted.

## BACKGROUND

Defendants Bobby J. Gorman ("Bobby"), and Robert E. Gorman ("Robert") seek an abatement of the current proceeding against Bobby, Robert, ADGO Marketing, LLC, and Tango Leasing Corporation ("Leasing") (collectively "Remaining Defendants") while a related action is pending in the bankruptcy court for the Eastern District of Texas.[1]

In 2003, Tango sought to enter into lease agreements with Navistar. On September 29, 2003, Leasing, Bobby, and Robert executed a continuing unconditional guaranty (the

---

[1] Defendants Tango Transport, LLC d/b/a Tango Transport, Inc. ("Tango"), Tango, Inc., GMGO, Inc. d/b/a GMGO, LLC, Gorman Group, Inc., Tango Enterprises, Inc., Tango Logistx, Inc. d/b/a Tango Logistx, LLC, and Tango Truck Services, LLC ("Debtors") are each in bankruptcy in the Eastern District of Texas No. 16-40642. In addition, the United States Bankruptcy Court for the Eastern District of Texas has extended the Automatic Stay of 11 U.S.C. § 362 to Tango Motor Transit, LLC. Therefore, these parties are not included in this motion.

"Continuing Guaranty") with Navistar (Dkt. #46, Exhibit 1-A). Pursuant to the Continuing Guaranty, Leasing, Bobby, and Robert "absolutely and unconditionally guarantee[d]: (a) the prompt payment of all monetary obligations of any sort" incurred by Tango and owed to Navistar. Each signatory agreed to be jointly and severally liable with Tango. To this date, no party has terminated the Continuing Guaranty.

On November 18, 2011, Tango, Bobby, and ADGO executed an Interlocking Guaranty (the "2011 Interlocking Guaranty") with identical obligations as the Continuing Guaranty (Dkt. #46, Exhibit 1-B). On November 21, 2011, Tango entered into Master Lease Agreement No.00001 ("Master Lease No.1") with Navistar for the lease of tractors (Dkt. #46, Exhibit 1-C). The terms of Master Lease No.1 were supplemented from time to time by "schedules." From November 21, 2011 to about December 12, 2012, Tango executed numerous schedules to lease additional tractors from Navistar.

In 2013, Tango began having problems routinely satisfying its monthly lease obligations to Navistar. On March 21, 2013, Tango and Navistar entered into a Rent Extension Agreement where Navistar agreed to extend the due date of certain monthly lease payments for extension fees provided in the agreement (Dkt. #46, Exhibit 1-E).

On February 28, 2014, Tango entered a 2014 Interlocking Guaranty and Master Lease No.2 with Navistar (Dkt. #46, Exhibit 1-H; Dkt. #46, Exhibit 1-F).[2] Master Lease No.2 was supplemented from time to time by schedules. From February 28, 2014 to about June 24, 2014, Tango executed numerous schedules to lease additional tractors from Navistar.

On October 7, 2014, Tango, Bobby, ADGO and eight other plaintiffs (the "Caddo Plaintiffs") sued Navistar in Caddo Parrish, Louisiana regarding defects in MaxxForce engines used in Navistar's trucks. The Caddo Plaintiffs claimed that the MaxxForce engines contained

---

[2] The Master Lease is erroneously labeled "00001" (Dkt. #46, Exhibit F).

defective emissions systems that caused the engines to fail before their intended useful life. This defect led to sudden breakdowns that required emergency arrangements to deliver the cargo on time. On August 31, 2015, the Caddo Plaintiffs settled with Navistar (the "Settlement"), terminating the Master Leases and Rent Extension Agreement. Contemporaneously, Navistar and Tango entered into the Reinstatement. Shortly thereafter, Tango defaulted under the Reinstatement.

Navistar has declared the entire indebtedness owed under the Reinstatement, Master Leases, and Rent Extension Agreement (collectively "the leases") immediately due and owing. As of April 6, 2016, Navistar is owed $26,836,549.93 under the leases.

On July 1, 2016, Navistar filed its Motion for Partial Summary Judgment on Liability (Dkt. #46). In Bobby's response to summary judgment, he asserts defenses based on lack of or failure of consideration for Tango's underlying obligations on the leases (Dkt. #51). Bobby then attempts to head-off Navistar's anticipated defense by arguing that the Settlement—where Bobby and the other Caddo Plaintiffs appear to waive all defenses—is invalid. Although Bobby admittedly lacks standing to void the Settlement, Bobby informs the Court in his response that an avoidance action by Tango is imminent. On November 18, 2016, the Debtors initiated an adversary proceeding against Navistar in the bankruptcy court seeking to void the Settlement ("Adversary Proceeding") (Dkt. #80, Exhibit A). As a result, on December 12, 2016, Robert and Bobby filed their Joint Motion to Abate (Dkt. #80) asking the Court to stay this case until the Adversary Proceeding is complete. On December 22, 2016, Navistar filed its response (Dkt. #87). On December 29, 2016, Robert and Bobby filed a reply (Dkt. #90).

## LEGAL STANDARD

A court has broad discretion to stay proceedings in the interest of justice and in control of its docket. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). Proper use of this authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). If there is "even a fair possibility" that a stay will damage someone else, then the proponent bears the burden of showing "a clear case of hardship or inequity." *See id.* at 255. The Court's decision to grant a stay should contemplate the following factors: (1) hardship on the movant if no stay is entered; (2) prejudice to the non-moving party if the stay is granted; and (3) judicial economy. *See Wedgeworth*, 706 F.2d at 545. Finally, "the court must carefully consider the time reasonably expected for resolution of the 'other case' in light of the principle that 'stay orders will be reversed when they are found to be of an indefinite duration.'" *Id.* (citation omitted).

## ANALYSIS

Robert and Bobby argue that the Court should stay this case until the Adversary Proceeding is resolved. Robert and Bobby argue that if this Court proceeds in the current action, then the Remaining Defendants will potentially be subject to inconsistent judgments because an essential element of a breach of guaranty claim requires the underlying default of Tango. Therefore, a judgment in this Court that Robert and Bobby are liable under the guaranties would be inconsistent with the possible outcome in the bankruptcy court that Tango is not liable under the leases for lack of or failure of consideration (Dkt. #80 at p. 7). Navistar argues that the Remaining Defendants do not have standing to assert Tango's defenses even if the Settlement is avoided and therefore a stay is inappropriate (Dkt. #87 at p. 8).

Navistar's claims against the Remaining Defendants are for breach of the guaranties. To establish a prima facie case against a guarantor, a claimant must show (1) proof of the original indebtedness; (2) the debtor's default; and (3) the guaranty. *Cont'l Bank v. Everett*, 760 F. Supp. 713, 716 (N.D. Ill. 1991) (citing *Mid-City Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985)).³ A guaranty is separate and distinct from the instrument creating the financial obligation that the guaranty assures repayment of. *See, e.g.*, *FDIC v. Rayman*, 117 F.3d 994, 999 (7th Cir. 1997). A guarantor's liability is secondary, triggered by the borrower's default on the underlying obligation. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487 (Ill. 2010). This is unlike a surety whose liability is primary. *Id.* The terms "absolute" and "unconditional" are recognized terms of art creating a guaranty of payment. *In re Clore*, 547 B.R. 915, 922 (Bankr. C.D. Ill. 2016). A guaranty of payment promises that the guarantor will undertake to pay the debt at maturity if the primary obligor fails to do so. *Id.* at 921–22 If not paid when due, the guarantor may be sued at once. *Beebe v. Kirkpatrick*, 152 N.E. 539, 616 (Ill. 1926).

Applying the framework from *Landis*, the Court concludes that a stay is appropriate in this case. Both the balance of the hardships between the parties and the potential for narrowing issues justify a stay.

The first factor in analyzing a stay looks to the harm that the Remaining Defendants would face if no stay is entered. The Remaining Defendant guarantors would face a significant hardship if no stay is entered. The Settlement is crucial to Tango's liability on the leases. If the settlement is voided by the bankruptcy court, then there are open questions to the adequacy of consideration given to Tango by Navistar. Although the record is silent on the issue, Tango would likely consent to the Remaining Defendants asserting its defense of failure of

---

³ The guaranties each provide for Illinois law to govern in this case.

consideration. Bobby is president of Tango and president of Gorman Group, Inc., the sole member of Tango. Robert is the CEO of Tango and is Bobby's father. Based on these facts, Tango is likely to consent to Robert and Bobby asserting its defense of failure of consideration. *See Temtex Indus., Inc. v. TPS Assocs.*, LLC, No. 09 CV 1379, 2012 WL 2929821, at *5 (N.D. Ill. July 18, 2012) (holding that a guarantor may assert the principal's defenses when the principal consents). Therefore, if this Court finds Robert and Bobby liable, but the Settlement is voided by the bankruptcy court, then Robert and Bobby may be held liable on a debt that ultimately does not exist.

Further, the Court does not have the power to adjudicate the validity of the Settlement at this time. Tango is in Chapter 11 bankruptcy. The Settlement is listed on Tango's schedule of assets subject to the automatic stay. Because the Court cannot adjudicate Tango's liability, the Court also cannot adjudicate the liability of any of the Remaining Defendant guarantors. There is a significant risk of inconsistent judgments if the Court finds the Remaining Defendants liable on the guaranties, but Tango is not liable on the underlying debt due to the Adversary Proceeding.

The second factor looks to the harm to Navistar if a stay is entered. Navistar's harm is a delay in payment only. While this is not a trivial harm, it is certainly less than the harm that the Remaining Defendants face, that is, paying for a $27 million debt that is later determined to not be owed.

Navistar argues that a stay would deprive it of the assurance of payment it sought when obtaining guaranties from the Remaining Defendants. A stay will not require Navistar to wait until the conclusion of all of Tango's bankruptcy proceedings. The Adversary Proceeding only deals with a small portion of Tango's overall bankruptcy petition. While Navistar must wait until the Adversary Proceeding is complete, Navistar still has the ability to obtain payment from

Remaining Defendants before the conclusion of Tango's bankruptcy proceedings. Therefore, a stay does not eliminate the utility of the guaranties. Thus, the prejudice to Navistar is reduced.

Further, Navistar will not be "compelled to stand aside while a litigant in another [case] settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Rather, Navistar is a party to the Adversary Proceeding, which will potentially settle a controlling issue in this case. Generally, a stay pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery. *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967) (citing *Landis*, 299 U.S. at 248).

Finally, judicial economy favors a stay. The Court does not have the power to adjudicate Tango's liability on the leases because of the automatic stay in bankruptcy. As stated above, the Adversary Proceeding has the potential to resolve controlling issues between the parties in this litigation. Therefore, judicial economy favors a stay.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Joint Motion to Abate (Dkt. #80) is hereby **GRANTED** and this case is **STAYED** for 180 days.

It is further **ORDERED** that Navistar's Motion for Partial Summary Judgment (Dkt. #46) is hereby **DENIED,** to be reinstated after the stay is lifted.

Accordingly, the parties' January 12, 2017 pretrial conference is cancelled. The parties are **ORDERED** to attend a status conference to discuss the status of the Adversary Proceeding. The status conference will be held on July 7, 2017, at 1:30 p.m. at the Paul Brown United States Courthouse located at 101 East Pecan Street in Sherman, Texas.

**SIGNED this 10th day of January, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE